1  MONICA M. QUINN (BAR NO. 198332)
   ALLEN MATKINS LECK GAMBLE
2    MALLORY & NATSIS LLP
   515 South Figueroa Street, Ninth Floor
3  Los Angeles, California 90071-3309
   Phone: (213) 622-5555
4  Fax: (213) 620-8816
   E-Mail: mquinn@allenmatkins.com
5
   SAMUEL H. STEIN (BAR NO. 144117)
6  ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
   1901 Avenue of the Stars, Suite 1800
7  Los Angeles, California 90067-6019
   Phone: (310) 788-2400
8  Fax: (310) 788-2410
   E-Mail: sstein@allenmatkins.com
9
   Attorneys for Defendant
10 TENET BENEFITS ADMINISTRATION
   COMMITTEE

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15 | EDEN SURGICAL CENTER, a            Case No. CV09 07156 FMO
    California medical corporation,
16                                      **MEMORANDUM OF POINTS AND**
               Plaintiff,              **AUTHORITIES BY TENET**
17                                      **BENEFITS ADMINISTRATION**
          vs.                          **COMMITTEE IN OPPOSITION TO**
18                                      **PLAINTIFF'S MOTION FOR**
    TENET HEALTHCARE                    **SUMMARY JUDGMENT**
19  CORPORATION, C/O TENET
    BENEFITS ADMINISTRATION
20  COMMITTEE, in its capacity as plan  Date:     June 2, 2010
    administrator; TENET BENEFITS       Time:     10:00 a.m.
21  ADMINISTRATION COMMITTEE,           Place:    Courtroom F

22             Defendants.

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND............................................................... 2

III.  ARGUMENT AND AUTHORITIES................................................... 5

    A.   Plaintiff Cannot Seek Damages From Tenet for PacifiCare's Alleged Improper or Untimely Processing of the Patient's Benefit Claim.................................................. 5

    B.   The Plaintiff Has No Standing to Sue ................................. 6

        1.   No assignment of document disclosure rights was executed by the Patient to Plaintiff ......................... 6

        2.   The Plan Document and Certificate are not contradictory; both prohibit assignment of document disclosure rights ........................................ 10

        3.   There is no standing in a penalty suit where, as here, no action for benefits is brought ............................. 12

        4.   Tenet has not waived its anti-assignment defense ................... 13

    C.   Tenet Fully Complied With Its ERISA Disclosure Obligations............................................................... 13

        1.   ERISA's disclosure requirements have been satisfied............................................................ 13

        2.   Only formal documents must be furnished ............................. 14

        3.   Informal advisory opinions do not expand the list of documents that must be furnished............................................. 15

        4.   Statutory penalties do not apply to documents required by regulations.............................................................. 16

        5.   All documents required by regulation have been furnished........................................................... 18

        6.   Plaintiff received explanations of benefits setting forth the reasons for denial of the claim .................................. 18

    D.   Penalties Are Not Warranted Here....................................... 20

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Alexander Mfg., Inc. Employee Stock Ownership Plan and Trust v.
    Illinois Union Insurance Co.,
    560 F.3d 984 (9th Cir. 2009) ........................................................ 10

Barker v. Pick N Pull Auto Dismantlers, Inc.,
    819 F.Supp. 889 (E.D. Cal. 1993) ................................................ 15

Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.,
    293 F.3d 1139 (9th Cir. 2002) ...................................................... 10

Board of Trustees of the CWA/ITU Negotiated Pension Plan v.
    Weinstein
    107 F.3d 139 (2nd Cir. 1997).......................................................... 14

Booton v. Lockheed Med. Benefit Plan,
    110 F.3d 1461 (9th Cir. 1997) ...................................................... 17

Brucks v. Coca-Cola Co.
    391 F.Supp.2d 1193 (N.D. Ga. 2005)............................................ 17

Chemung Canal Trust Co. v. Sovran Bank/Maryland,
    939 F.2d 12 (2nd Cir. 1991)............................................................. 7

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
    467 U.S. 837 (1984)...................................................................... 15

Commissioner v. Acker,
    361 U.S. 87 (1959)........................................................................ 16

Crotty v. Cook,
    121 F.3d 541 (9th Cir. 1997) ........................................................ 12

Davidowitz v. Delta Dental Plan of California, Inc.,
    946 F.2d 1476 (9th Cir. 1991) ................................................... 6, 8

Fergus v. Standard Ins. Co.
    27 F.Supp.2d 1247 (D. Or. 1998) ................................................ 16

Franchise Tax Board of the State of California v. Construction Laborers
    Vacation Trust for Southern California,
    463 U.S. 1 (1983)............................................................................ 7

Graeber v. Hewlett Packard Income Protection Plan,
    281 Fed. Appx. 679 (9th Cir. 2008).............................................. 20

Groves v. Modified Retirement Plan for Hourly Paid Employees of the
    Johns Mansville Corp.,
    803 F.2d 109 (3rd Cir. 1986) ........................................................ 16

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

|  |  | Page(s) |
|---|---|---|

Johnson v. Buckley,
    356 F.2d 1067 (9th Cir 2004) ........................................................... 12

Kentucky Ass'n of Health Plans, Inc. v. Miller,
    538 U.S. 329 (2003).......................................................................... 18

LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores,
    Inc.,
    298 F.3d 348 (5th Cir. 2002) ........................................................... 11

Long Beach Mem. Med. Center v. California Mart Employee Benefit
    Plan,
    1999 U.S. App. LEXIS 3346 (1999) ...................................................7

Misic v. Building Service Employees Health and Welfare Trust,
    789 F.2d 1374 (9th Cir. 1986) ...........................................................6

Moran v. Aetna Life Ins. Co.,
    872 F.2d 296 (9th Cir. 1989) ..................................................... 10, 12

Nationwide Mut. Ins. Co. v. Darden,
    503 U.S. 318 (1992)......................................................................... 15

Patelco Credit Union v. Sahni,
    262 F.3d 897 (9th Cir. 2001) ........................................................... 15

Pisciotta v. Teledyne Industries, Inc.,
    91 F.3d 1326 (9th Cir. 1996) ........................................................... 10

Sgro v. Danone Waters,
    532 F.3d 940 (9th Cir. 2008) ........................................................... 15

Shaver v. Operating Engineers Local 428 Pension Trust Fund
    332 F.3d 1198 (9th Cir. 2003) ......................................................... 14

Silvers v. Sony Pictures Entertainment, Inc.,
    402 F.3d 881 (9th Cir. 2005) .............................................................7

Simon v. Value Behavioral Health, Inc.,
    208 F.3d 1073 (9th Cir. 2000) ...........................................................7

Stuhlreyer v. Armco, Inc.
    12 F.3d 75 (6th Cir. 1993) ............................................................... 16

United States v. Eaton
    144 U.S. 677 (1892)......................................................................... 16

Watkins v. Westinghouse Hanford Co.,
    12 F.3d 1517 (9th Cir. 1993) ........................................................... 10

Wilczynski v. Lumbermens Mutual Casualty Co.
    93 F.3d 397 (7th Cir. 1996) ............................................................. 17

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

660130.04/WLA
308529-00016/5-12-10/shs/arr

1

<u>**Page(s)**</u>

2 <u>Younkin v. Prudential Ins. Co.</u>

3      2007 U.S. Dist. LEXIS 5376 (D. Mont. 2007) ................................................ 16

<u>Younkin v. Prudential Ins. Co.</u>

4      288 Fed. Appx. 344 (9th Cir. 2008) ............................................................. 16

5 <u>**Statutes**</u>

6 29 C.F.R. § 2560.503-1 ........................................................................................ 19

7 29 U.S.C. § 1024 .................................................................................................. 19

8 29 U.S.C. § 1024(b) ............................................................................................. 14

9 29 U.S.C. § 1104 ................................................................................................... 5

10 29 U.S.C. § 1132 .................................................................... 6, 11, 12, 13, 15, 16

11 29 U.S.C. § 1132(c) ............................................................................................. 15

12 29 U.S.C. § 1144 .................................................................................................. 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

660130.04/WLA
308529-00016/5-12-10/shs/arr

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiff Eden Surgical Center's Motion consists of a mass of confusing factual assertions that appear to suggest that Tenet Benefits Administration Committee bears responsibility for the denial of the Patient's claim for benefits submitted by Eden and thus, statutory penalties should be awarded to Eden. However, Tenet was not responsible for the denial of the Patient's claim for benefits. Plaintiff's claim was denied due to Eden's failure to submit the requisite information in a timely manner.

Moreover, the denial of Eden's claim is not at issue here. The issue is whether Eden was assigned the right by the Patient to request from Tenet disclosure of documents, and assuming that right was assigned, whether or not Tenet provided the documents required under 29 U.S.C. § 1024(b)(4).

As a preliminary matter, Plaintiff lacks standing as neither the Tenet Employee Benefit Plan, the PacifiCare-Tenet Contract (PPO Policy), Summary Plan Description, or assignment form executed by the Patient allow for the assignment of document disclosure rights from the Patient to Eden Surgical Center. Moreover, even if Plaintiff had standing because such an assignment was permissible under the documents, Tenet has disclosed all documents it was required to disclose under the statute. Lastly, to the extent Eden claims that it lacked information explaining a denial of benefit determination by PacifiCare and thus, needed additional information from Tenet, such an assertion is unbelievable. The Explanation of Benefits issued by PacifiCare clearly stated that Eden failed to initially provide the requisite codes, and failed to appeal such denial in a timely manner.

This is nothing more than Eden's attempt to utilize a document disclosure claim against Tenet as leverage to obtain payment on its improperly submitted claim from PacifiCare. Such transparent motives should not be rewarded, and Plaintiff's motion for summary judgment should be denied it its entirety.

1  ## II.     FACTUAL BACKGROUND.

2        Tenet Benefits Administration Committee is the administrator of the Tenet

3  Employee Benefit Plan. Iba Decl., Exh. "A" at p. 57.[1]  PacifiCare is the insurance

4  carrier and claims administrator of the Plan. Id., at ¶ 3.

5        No documents exist which evidence an assignment of document disclosure

6  rights from the Patient to Eden Surgical Center.  Section 18.4 of the Tenet Employee

7  Benefit Plan contains a prohibition against assignments: "[N]o interest in or benefit

8  payable under the Plan will be subject in any manner to . . . assignment . . . ."  Iba

9  Decl., Exh. "A" at p. 76.  The PacifiCare-Tenet Contract (PPO Policy) and

10  Summary Plan Description also contains a prohibition against assignments, except

11  for "covered expenses" which would not include any document disclosure rights.

12  Id., Exh. "B" at p. 216; Exh. "C" at p. 306.  Lastly, the assignment executed by the

13  Patient to Eden Surgical Center only applies to the following three situations:  (1) an

14  administrative claims process; (2) any appeal or review process for a denied claim;

15  or (3) any legal process, necessary to collect claims submitted for health insurance

16  benefits. Id., Exh. "K."  None of these situations are applicable to this situation – a

17  claim regarding document disclosure rights.

18        Contrary to Plaintiff's factual assertions, Tenet did not issue a denial of a

19  benefit of the Patient's claim.  Such denial was issued by PacifiCare.  And, the

20  reasons for the benefit denials by PacifiCare, not Tenet, are readily apparent.  In

21  November 2006, PacifiCare issued an Explanation of Benefits denying payment on

22  Eden's claim, alleging that the "[c]laim was closed due to lack of response to prior

23  request for additional information.  Services will be considered and patientation

24  responsibility calculated when information is received."  See EDEN MSJ 003-004,

25  attached to Eden Surgical Center's Compendium of Exhibits filed concurrently with

26  Eden's Motion for Summary Judgment on April 21, 2010.  In December 2006,

27

28  [1]  See Iba Declaration submitted concurrently with Tenet's Motion for Summary
Judgment on April 21, 2010.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1    PacifiCare informed Eden that "we have determined that although we are in receipt
2    of the medical records submitted by your office, we are still in need of a corrected
3    billing with the CPT codes of the services performed."  EDEN MSJ 012.  In August
4    2009, PacifiCare issued an adverse benefit determination that the Patient's claim
5    was ineligible because "claims must be submitted within the timely filing limit in
6    order to be paid."  EDEN MSJ 042.  Eden was not denied any opportunity to know
7    the status or reasons for the adverse benefit determinations.

8         This litigation is nothing more than another attempt by Eden Surgical Center
9    to obtain reimbursement on PacifiCare's denial of the Patient's claim.  Indeed, when
10   Dr. Laurence Reich first corresponded with Tenet in 2009, he indicated that he was
11   seeking its assistance to resolve the alleged failure of PacifiCare to process the
12   Patient's claim properly.  Id., ¶ 5, Exh. "D" at p. 354.  His motives were always
13   readily apparent.

14        On July 22, 2009, Dr. Reich told Ms. Iba, "If PacifiCare resolves this claim
15   appropriately and expeditiously, I will recommend to Eden's governing board that
16   the matter between it and Tenet conclude."  Id., Exh. "H" at p. 376.  On August 4,
17   2009, Dr. Reich threatened, "[E]ither this claim is paid immediately and properly
18   without re-pricing or discounting or I will recommend to Eden's Governing Board
19   that the organization commence a 1132(a)(1)(A) action against Tenant."  Id., Exh.
20   "I" at p. 379.  Most telling is Dr. Reich's August 5, 2009 correspondence where he
21   indicated that "it appears the controversy is concluding 'due to a' flurry of
22   communications with a supervisor at PacifiCare."  Id., Exh. "J" at 382.

23        Despite its belief that Eden lacked standing to request any Plan documents, in
24   order to avoid a dispute, Tenet produced the Tenet Employee Benefit Plan, the
25   PacifiCare – Tenet Contract (PPO Policy) and the Summary Plan Description.  Id.,
26   ¶ 6, Exhs. "G" at p. 374, "I" at p. 378, and "J" at p. 381.  Tenet also voluntarily
27   forwarded all medical records provided by Plaintiff regarding the Patient to
28   PacifiCare and requested that it reprocess the claim.  Iba Decl., ¶ 9.

1    Moreover, Iba repeatedly asked Dr. Reich if there were additional documents

2    he needed.  Id., Exhs. "G" at p. 374, "I" at p. 378, and "J" at p. 381.  Most telling is

3    that following each of Ms. Iba's offers on July 15, 2009, August 4, 2009, and

4    August 5, 2009 to provide additional documents, Dr. Reich never requested

5    additional documents and, instead, made clear that if the Patient's claim was paid by

6    PacifiCare, the matter between Eden and Tenet would conclude.  Id., Exhs. "H" at

7    p. 376, "I" at p. 379, and "J" at p. 382.

8        Despite Tenet's disclosure of documents and repeated requests that Reich

9    clarify the information he needed, this litigation commenced.  This is not surprising

10   considering Dr. Reich and/or Eden Surgical Center have been plaintiffs in at least

11   forty cases filed under the Employee Retirement Income Security Act of 1974, as

12   amended, ("ERISA") since 1995, with fifteen filed in 2009 alone.[2]  Quinn Decl.,

13

---

14   [2]  See, e.g., (1) Eden Surgical Center v. Boyd Coffee Company, 10cv-0884 (C.D.
     Cal.); (2) Eden Surgical Center v. B Braun Medical, Inc., 09cv-1011 (C.D. Cal.);
15   (3) Eden Surgical Center v. Budco Group, Inc., 09cv-3991 (C.D. Cal.); (4) Eden
     Surgical Center v. California Motor Car Dealers Association, 09cv-6456 (C.D.
16   Cal.); (5) Eden Surgical Center v. Centric Group LLC, Health Benefits Plan,
     09cv-7154 (C.D. Cal.); (6) Eden Surgical Center v. Dollar Thrifty Automotive
17   Group, Inc., 09cv-6454 (C.D. Cal.); (7) Eden Surgical Center v. Emerson
     Electric Co Self-Funded Medical PLA, 09cv-2554 (C.D. Cal.); (8) Eden Surgical
18   Center v. Experian Information Solutions, Inc., 09cv-489 (C.D. Cal.); (9) Eden
     Surgical Center v. General Electric Company, 09cv-4301 (C.D. Cal.); (10) Eden
19   Surgical Center v. Marvin Engineering Company, Inc., 09cv-1407 (C.D. Cal.);
     (11) Eden Surgical Center v. New Breed, Inc. Health Plan Administrator, 09cv-
20   4031 (C.D. Cal.); (12) Eden Surgical Center v. Ozburn-Hessey Logistics, 09cv-
     2965 (C.D. Cal.); (13) Eden Surgical Center v. Rudolph Foods Company, Inc.,
21   09cv-3060 (C.D. Cal.); (14) Eden Surgical Center v. Sprint Nextel Medical Plan
     Administrator, 10cv-01424 (C.D. Cal.); (15) Eden Surgical Center v. St. Jude
22   Medical, Inc., 09cv-1253 (C.D. Cal.); (16) Eden Surgical Center v. The
     Administrative Committee of the Time Warner Cable Benefits Plan, 10cv-0920
23   (C.D. Cal.); (17) Eden Surgical Center v. WW Grainger, Inc., 09cv-302 (C.D.
     Cal.); (18) Reich v. Aetna US Healthcare, et al., 98cv-5212 (C.D. Cal.);
24   (19) Reich v. Boeing Company, 99cv-11805 (C.D. Cal.); (20) Reich v.
     Boilermakers Nat'l, 96cv-7215 (C.D. Cal.); (21) Reich v. Charter
25   Communications Inc., 04cv-9126 (C.D. Cal.); (22) Reich v. CIFWP, 98cv-7219
     (C.D. Cal.); (23) Reich v. Countrywide Cred. Ind., 03cv-7004 (C.D. Cal.);
26   (24) Reich v. CIGNA Healthcare, Inc., 01cv-04076 (C.D. Cal.); (25) Reich v.
     Deutsche Bank, 99cv-11804 (C.D. Cal.); (26) Reich v. DHL Premium Plan,
27   04cv-8322 (C.D. Cal.); (27) Reich, et al. v. Sara Gault, 95cv-3657 (C.D. Cal.);
     (28) Reich v. Group Medical Expense Benefits Plan for Broadcam Corporation
28   et al., 04cv-169 (C.D. Cal.); (29) Reich v. Health Net of CA Inc., 03cv-1405
     (C.D. Cal.); (30) Reich v. Informal Rockwell, et al., 01cv-4884 (C.D. Cal.);

1  Exh. "A" submitted concurrently herewith Tenet's Motion for Summary Judgment

2  on April 21, 2010.  Their status as repeat ERISA litigants supports the proposition

3  that the requested documents were sought to fuel litigation, rather than to analyze

4  the denial of benefits.  This is further evidenced by the fact that Eden has never

5  sought the documents during the pendency of this litigation.  Eden has not served a

6  single request for production of documents, nor during this action has it sought to

7  subpoena PacifiCare for production of documents.  Quinn Decl., ¶ 3.

8  **III.   ARGUMENT AND AUTHORITIES.**

9       **A.   Plaintiff Cannot Seek Damages From Tenet for PacifiCare's**

10            **Alleged Improper or Untimely Processing of the Patient's Benefit**

11            **Claim.**

12       The Plaintiff appears to claim that the sole purpose of ERISA is to provide

13 protection for, and remedies to, employees participating in employee health and

14 benefit programs.  However, ERISA also limits the remedies available to plan

15 participants and beneficiaries, and provides that the plan document controls the

16 nature and extent of the benefits available.  Massachusetts Mut. Life Ins. Co. vs.

17 Russell, 473 U.S. 134 (1985); 29 U.S.C. § 1104(a)(1)(D).  In holding that ERISA

18 does not include a cause of action for extracontractual damages caused by improper

19 or untimely processing of benefit claims, the Supreme Court stated:

20       "The six carefully integrated civil enforcement provisions found in § 502(a)

21 of the statute as finally enacted, however, provide strong evidence that Congress did

---

23  (31) Reich v. Lakeshore Learning, 98cv-7711 (C.D. Cal.); (32) Reich v.
    Merchant & Gould PC, 00cv-515 (C.D. Cal.); (33) Reich v. Novartis Pharm.
24  Corp., 04cv-10414 (C.D. Cal.); (34) Reich v. Teletech Holdings, et al., 01cv-
    4261 (C.D. Cal.); (35) Reich v. Time Warner Inc., 00cv-4213 (C.D. Cal.);
25  (36) Reich v. Tricon Global, 00cv-9125 (C.D. Cal.); (37) Reich v. Tricon Global,
    01cv-62 (C.D. Cal.); (38) Reich v. United Airlines Med, et al., 97cv-9266 (C.D.
26  Cal.); (39) Reich v. Universal Studios, et al., 99cv-1254 (C.D. Cal.); (40) Reich
    v. UPS Health and Welfare Package, 04cv-833 (C.D. Cal.); (41) Reich v. Walt
27  Disney Company, et al., 00cv-8792 (C.D. Cal.); and (42) Reich v. United
    Airlines P&W, 95cv-6222 (C.D. Cal.).

28

1   *not* intend to authorize other remedies that it simply forgot to incorporate expressly.

2   The assumption of inadvertent omission is rendered especially suspect upon close

3   consideration of ERISA's interlocking, interrelated, and interdependent remedial

4   scheme, which is in turn part of a 'comprehensive and reticulated statute.' . . . The

5   presumption that a remedy was deliberately omitted from a statute is strongest when

6   Congress has enacted a comprehensive legislative scheme including an integrated

7   system of procedures for enforcement." <u>Russell</u>, 473 U.S. at 146, 147.  Since

8   ERISA includes a comprehensive enforcement system, only causes of action

9   explicitly set forth in the statute are permitted.

10          **B.      The Plaintiff Has No Standing to Sue.**

11          The Plaintiff's Complaint contains only a single cause of action – a claim for

12   penalties for alleged document disclosure violations under 29 U.S.C.

13   § 1132(a)(1)(A).  Since that code section permits suits only by a participant or

14   beneficiary, and the Plaintiff concedes that it is neither a participant nor a

15   beneficiary, Plaintiff's attempt to rely on an assignment from a plan participant as a

16   basis for standing to sue fails.  Complaint, ¶ 6.

17          **1.      No assignment of document disclosure rights was executed by**

18          **the Patient to Plaintiff.**

19          The Ninth Circuit has never extended standing to sue for document disclosure

20   violations to an assignee of a plan participant.  Furthermore, the Ninth Circuit has

21   specifically held that non-assignment clauses included in plan documents are legal

22   and binding in this jurisdiction.  <u>Davidowitz v. Delta Dental Plan of California, Inc.</u>,

23   946 F.2d 1476 (9th Cir. 1991).  The Plaintiff has failed to analyze or even cite this

24   Ninth Circuit decision.  Instead, the Plaintiff attempts to rely on the <u>Misic</u> case,

25   which did not involve a claim for document disclosure violations, and did not

26   involve a plan document which contained a non-assignment provision.  <u>See Misic v.</u>

27   <u>Building Service Employees Health and Welfare Trust</u>, 789 F.2d 1374 (9th Cir.

28   1986).  The <u>Davidowitz</u> decision clearly distinguishes the <u>Misic</u> case, and renders

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1   the <u>Misic</u> case inapposite to situations such as this where the plan document

2   contains an anti-assignment clause.  <u>Davidowitz</u>, 946 F.2d at 1480, 1481.  The

3   <u>Davidowitz</u> case was followed in a later Ninth Circuit decision.  <u>Long Beach Mem.</u>

4   <u>Med. Center v. California Mart Employee Benefit Plan</u>, 1999 U.S. App. LEXIS

5   3346 (9th Cir. 1999).

6           The United States Supreme Court has held that "ERISA carefully enumerates

7   the parties entitled to seek relief under [29 U.S.C. § 1132]; it does not provide

8   anyone other than participants, beneficiaries, or fiduciaries with an express cause of

9   action . . . ."  <u>Franchise Tax Board of the State of California v. Construction</u>

10  <u>Laborers Vacation Trust for Southern California</u>, 463 U.S. 1, 27 (1983).  The Ninth

11  Circuit has also held that "[i]n the absence of some indication of legislative intent to

12  grant additional parties standing to sue, the list in [29 U.S.C. § 1132] should be

13  viewed as exclusive."  <u>Simon v. Value Behavioral Health, Inc.</u>, 208 F.3d 1073, 1082

14  (9th Cir. 2000), quoting <u>Chemung Canal Trust Co. v. Sovran Bank/Maryland</u>, 939

15  F.2d 12, 14 (2nd Cir. 1991).  "[U]nder traditional principles of statutory

16  interpretation, Congress' explicit listing of who may sue . . . should be understood as

17  an exclusion of others . . . ."  <u>Silvers v. Sony Pictures Entertainment, Inc.</u>, 402 F.3d

18  881, 885 (9th Cir. 2005).  When a statute designates certain persons, things, or

19  manners of operation, all omissions should be understood as exclusions.  <u>Id.</u>

20          Section 18.4 of the Tenet Employee Benefit Plan, which is entitled Non-

21  Alienation of Benefits states, in relevant part:

22          "[N]o interest in or benefit payable under the Plan will be subject in any

23  manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance,

24  or charge, and any attempt by a Covered Person to anticipate, alienate, sell, transfer,

25  assign, pledge, encumber, or charge the same will be void and of no effect; nor will

26  any interest in or benefit payable under the Plan be in any way subject to any legal

27  or equitable process, including garnishment, attachment, levy, seizure, or lien."

28

1    In the Ninth Circuit, it is clear that this broad anti-assignment provision is

2  enforceable.  <u>Davidowitz v. Delta Dental Plan of California, Inc.</u>, 946 F.2d 1476 (9th

3  Cir. 1991).

4    Since the Ninth Circuit prohibits assignments in cases where the plan

5  document contains a non-assignment provision, and since the Ninth Circuit has

6  never allowed assignment of standing in a case involving an allegation of document

7  disclosure violations, the Plaintiff does not have standing to sue in this case.

8    Moreover, the assignment of rights in this case did not apply to document

9  disclosure rights.  The assignment executed by the Patient to Eden Surgical Center

10  only applies to the following three situations:  (1) an administrative claims process;

11  (2) any appeal or review process for a denied claim; or (3) any legal process,

12  necessary to collect claims submitted for health insurance benefits.  <u>Id.</u>, Exh. "K."

13    Plaintiff claims that the assignment executed by the Patient assigned the right

14  to pursue document disclosure.  Plaintiff is mistaken.  Plaintiff selectively quotes the

15  language from the assignment in an effort to bolster its case.  The "right to assert

16  ALL causes of action for judicial review" applies "if my claim for benefits is

17  administratively denied in whole or in part . . . ."  Since Plaintiff is not seeking

18  judicial review of a denied claim, the assignment does not apply to this case brought

19  under § 1132(a)(1)(A) for statutory penalties for alleged disclosure violations.

20  Furthermore, the assignment of relief as a "claimant" under § 1132(c) is ineffective

21  since 29 U.S.C. § 1132(c) does not use the word "claimant."  The regulations under

22  29 U.S.C. § 1133 use the word "claimant" in the context of benefit claims and

23  appeals.  As such, the assignment form relates only to benefits claims, which is

24  consistent with the remainder of the form and the cases described below.

25    As this court has recently ruled in two virtually identical cases brought by the

26  same Plaintiff, the assignment form executed by the plan beneficiary did not assign

27  to the Plaintiff the right to request plan documents, and, therefore, the Plaintiff has

28  no standing to sue.  <u>See</u> <u>Eden Surgical Center v. Rudolph Foods Company, Inc.</u>, CV

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1  09-3060 SVW (MANx) (C.D. Cal. Sept. 10, 2009); Eden Surgical Center v. B.

2  Braun Medical, Inc., CV 09-1011 SVW (AJWx) (C.D. Cal. Sept. 10, 2009).  The

3  second sentence of the purported assignment form at issue in this case, as well as in

4  the Rudolph and Braun Medical cases, is identical.  See Request for Judicial Notice

5  submitted concurrently with Tenet's Motion for Summary Judgment on April 21,

6  2010, Exh. "A" at p. 8 (Rudolph Order); Exh. "B" at p. 29 (Braun Medical Order).

7        As indicated in the Rudolph Order (RJN, Exh. "A" at pp. 21-23) and in the

8  Braun Medical Order (RJN, Exh. "B" at pp. 41-42):

9        The unambiguous language of the 'Assignment of Benefits and Rights;

10       Appointment of Administrative Representative,' uncontradicted by any

11       extrinsic evidence in the record, establishes that the Plan participants

12       never assigned to Eden the right to bring the present action.  Their

13       assignment is only effective during the administrative and legal

14       processes enumerated in the second sentence of their 'Assignment of

15       Benefits and Rights; Appointment of Administrative Representative.'

16       . . . This list does not include a suit for document disclosure violations.

17       To the extent that the Plan participants assigned to Eden the right to

18       bring claims under § 1132(c), that assignment is only effective during

19       suits 'necessary to collect claims . . . for health insurance benefits.'

20       As in Rudolph and Braun Medical, supra, the instant case involves a claim for

21  statutory penalties arising from an alleged failure to disclose the requisite

22  documents.  The Assignment of Benefits and Rights; Appointment of

23  Administrative Representative at issue in this case does permit the assignment of

24  this claim.  As such, Plaintiff has no standing in this case.

25       **2.      The Plan Document and Certificate are not contradictory;**

26              **both prohibit assignment of document disclosure rights.**

27       In an attempt to circumvent the Ninth Circuit decision in the Davidowitz case,

28  the Plaintiff attempts to find contradictions in the clear plain language.  In claiming

1   that the alleged contradiction must be resolved in the Plaintiff's favor, the Plaintiff

2   relies on <u>Alexander Mfg., Inc. Employee Stock Ownership Plan and Trust v. Illinois</u>

3   <u>Union Insurance Co.</u>, 560 F.3d 984 (9th Cir. 2009). However, the <u>Alexander</u> case

4   involves Oregon insurance law, and is not relevant to this ERISA case.

5           The Plaintiff also attempts to rely on a clearly distinguishable case, in which a

6   plan document stated that an individual was eligible for a retirement plan, while the

7   summary plan description indicated that the individual was not eligible. <u>Bergt v.</u>

8   <u>Retirement Plan for Pilots Employed by MarkAir, Inc.</u>, 293 F.3d 1139 (9th Cir.

9   2002). There is no such contradiction in this case.

10          The <u>Bergt</u> case cites favorably to <u>Pisciotta v. Teledyne Industries, Inc.</u>, 91

11  F.3d 1326 (9th Cir. 1996). As indicated in the <u>Pisciotta</u> case, an insurance certificate

12  is not an official summary plan description, and the plan document language takes

13  precedence over the insurance certificate. <u>Pisciotta</u>, 91 F.3d at 1330. Therefore, the

14  insurance certificate cited by the Plaintiff is not controlling because the certificate is

15  not an official plan document. The clear anti-assignment language of the Tenet

16  Employee Benefit Plan is controlling in this case. It has long been the rule in this

17  jurisdiction that an unambiguous provision in the governing plan document governs

18  over any allegedly contrary information in other documents or statements. <u>Watkins</u>

19  <u>v. Westinghouse Hanford Co.</u>, 12 F.3d 1517 (9th Cir. 1993); <u>Moran v. Aetna Life</u>

20  <u>Ins. Co.</u>, 872 F.2d 296, 299-300 (9th Cir. 1989).

21          In the <u>Pisciotta</u> case, the court also held that, even if the insurance certificate

22  was a summary plan description, the certificate was not controlling because it

23  contained the following disclaimer: "This booklet describes provisions of the group

24  insurance program contained in the contract between the company and the insurance

25  carrier. The contract shall be the controlling document." <u>Id.</u> at p. 1331. The

26  Pisciotta court concluded as follows: "The disclaimer clearly stated that the contract

27  was the controlling document. The contract was available for review by any

28  employee who wished to see it. Therefore, the reservation was effective." <u>Id.</u> As

1   such, the plan document which permitted health plan amendments and cost increases

2   controlled over the summary document which promised free lifetime medical

3   coverage. Id.

4          The insurance certificate at issue in this case similarly provides, in large, bold

5   type, that it is only a description of the health plan benefits, that additional terms are

6   contained in the governing document, and that a copy of the governing document

7   will be furnished upon request and is available at the employer's personnel office.

8   Iba Decl., Exh. "C" at p. 34. Therefore, plan participants clearly are on notice that

9   the plan document is controlling and is available upon request. As such, the anti-

10  assignment provision of the plan document is enforceable.

11         In any event, there is no contradiction between the plan document and the

12  insurance certificate in this case. The language of the insurance certificate allows

13  assignments of payments for covered benefits to health care providers, but does not

14  provide for assignments of disputed benefits or rights relating to alleged document

15  disclosure violations. It is perfectly consistent to allow assignment of the payment

16  of benefits that are agreed to be covered under the plan, while refusing to allow

17  assignments of disputed benefits or other rights. See LeTourneau Lifelike Orthotics

18  & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348 (5th Cir. 2002). While the

19  assignment in LeTourneau effectively assigned the right to receive payments for

20  duly covered claims, it was ineffective to assign other contractual or statutory rights

21  under ERISA. Id. at 352. Therefore, the health care provider had no standing. Id.

22  at 353. Similarly, under the plan language at issue in this case, the Plaintiff has no

23  standing to sue for alleged document disclosure violations.

24              **3.    There is no standing in a penalty suit where, as here, no**

25                     **action for benefits is brought.**

26         The Plaintiff also lacks standing because an action for document disclosure

27  violations under 29 U.S.C. § 1132(a)(1)(A) cannot be brought independently of a

28  claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B). Johnson v. Buckley, 356

1   F.2d 1067, 1077 (9th Cir. 2004); <u>Crotty v. Cook</u>, 121 F.3d 541, 544 n.4 (9th Cir.

2   1997) ("To have standing, Crotty must be seeking benefits under the plans."). Since

3   the Plaintiff is not seeking to recover plan benefits, the Plaintiff lacks standing to

4   assert a violation of ERISA's disclosure requirements. <u>Johnson</u>, 356 F.3d at 1077.

5          The Plaintiff misconstrues the <u>Moran</u> decision when it asserts that decision

6   permits a claim for disclosure violations that was brought without a concomitant

7   claim for benefits. <u>Moran v. Aetna Life Ins. Co.</u>, 872 F.2d 296 (9th Cir. 1989). That

8   case grants summary judgment against a plaintiff seeking statutory penalties because

9   the plaintiff brought suit against a party other than the plan administrator. <u>Id.</u> The

10  <u>Moran</u> decision does not permit a suit for statutory penalties for alleged disclosure

11  violations in a case where the plaintiff fails to include a claim for benefits. <u>Id.</u>

12         Summary judgment should be granted in favor of Tenet because a claim for

13  penalties under 29 U.S.C. § 1132(a)(1)(A) cannot be brought independently of a

14  claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

15         **4.    <u>Tenet has not waived its anti-assignment defense.</u>**

16         The Plaintiff claims, without citing any authority, that Tenet has waived its

17  anti-assignment defense because Tenet did not inform Eden prior to litigation that it

18  was barred from pursuing payment by an anti-assignment provision. While the

19  Plaintiff made an administrative claim for benefit payments prior to litigation, it did

20  not make an administrative claim for penalties for alleged disclosure violations.

21  Once again, Plaintiff erroneously suggests that Tenet was responsible for the denial

22  of payment of Plaintiff's benefit claim in an effort to muddy the issues. There was

23  no prior opportunity to raise an anti-assignment defense to a claim for statutory

24  penalties for alleged disclosure violations, and, therefore, there has been no waiver

25  of such a defense.

26

27

28

1   **C.      Tenet Fully Complied With Its ERISA Disclosure Obligations.**

2            **1.      ERISA's disclosure requirements have been satisfied.**

3        Even if the Plaintiff has standing, which we dispute, the Defendant has

4   already furnished to the Plaintiff all documents that must be furnished under ERISA.

5   The ERISA document disclosure requirement is found in 29 U.S.C. § 1024(b)(4):

6        "The administrator shall, upon written request of any participant or

7        beneficiary, furnish a copy of the latest updated summary, plan

8        description, and the latest annual report, any terminal report, the

9        bargaining agreement, trust agreement, contract, or other instruments

10       under which the plan is established or operated. The administrator may

11       make a reasonable charge to cover the cost of furnishing such complete

12       copies.  The Secretary [of Labor] may by regulation prescribe the

13       maximum amount which will constitute a reasonable charge under the

14       preceding sentence."

15           **2.      Only formal documents must be furnished.**

16       It is undisputed that the Defendant has furnished to the Plaintiff all requested

17   documents that come within the requirements of the statute.  The Plaintiff requested

18   the summary plan description, plan document, administrative contract and any

19   contract between Tenet, PacifiCare, United Health and Ingenix/Viant and any other

20   relevant claims subsidiary, as well as any re-pricing or charge index data base

21   utilized in creating an adverse benefit determination of the instant claim.  Iba Decl.,

22   Exh. "D" at p. 357.  Tenet produced the Tenet Employee Benefit Plan, the

23   PacifiCare - Tenet Contract (PPO Policy) & Summary Plan Description.  Iba Decl.,

24   ¶ 6, Exhs. "G" at p. 374, "I" at p. 378, and "J" at p. 381.

25       To the extent Plaintiff claims that other unofficial documents should have

26   been produced, Plaintiff is mistaken.  Ancillary documents, such as unofficial

27   documents used to determine benefit levels in a particular case, are not required to

28   be furnished under 29 U.S.C. § 1024(b) or § 1132(c)(1)(B).  Shaver v. Operating

1  Engineers Local 428 Pension Trust Fund, 332 F.3d 1198 (9th Cir. 2003); Board of

2  Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139 (2nd

3  Cir. 1997).  Both cases analyzed the term "other instruments" and held that it refers

4  to formal documents that govern the plan and not all documents that may reference

5  how the plan conducts operations.

6        "Barring indicia to the contrary, the broad term 'other instruments,' should be

7  limited to the class of objects that specifically precedes it.  Shaver, 332 F.3d at 1202.

8  The statute mentions only official legal documents, and the reference to "other

9  instruments" does not expand the type of documents to be furnished under 29 U.S.C.

10 § 1024(b).  Id.

11        Similarly, the Weinstein court stated that the "other instruments" clause was

12 meant to refer to formal documents that govern the plan, not to all documents by

13 means of which the plan conducts operations.  Weinstein, 107 F.3d at 143.

14 29 U.S.C. § 1024(b) requires the disclosure of only the documents described with

15 particularity in the statute and "other instruments" similar in nature.  Id.  Although a

16 document other than an official governing document may contain information about

17 a plan, the administrators are not bound by the document.  Weinstein, 107 F.3d at

18 144.  While such a document may describe various rights and obligations, it does

19 not establish those rights and obligations, and therefore is not a formal instrument

20 governing a plan's operations.  Id. at 144, 145.

21            **3.    Informal advisory opinions do not expand the list of**

22                 **documents that must be furnished.**

23        The Plaintiff attempts to avoid the limits on document disclosure in the Ninth

24 Circuit, as set forth in the Shaver case, supra, by citing to an unofficial and non-

25 binding advisory opinion letter issued by the Department of Labor, and by

26 misconstruing the Chevron case, infra, to attempt to give effect to such advisory

27 opinion letter.

28

1       The <u>Chevron</u> case analyzed official regulations of the Environmental

2  Protection Agency, which were published in the Federal Register.  <u>Chevron U.S.A.,</u>

3  <u>Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).  However, the

4  Advisory Opinion Letter cited by the Plaintiff is an unofficial document that binds

5  only the parties who requested the opinion, and is not entitled to deference by this

6  court.

7       A Department of Labor Advisory Opinion is not binding authority.  <u>Patelco</u>

8  <u>Credit Union v. Sahni</u>, 262 F.3d 897, 908 (9th Cir. 2001).  "Only the parties

9  described in the request for opinion may rely on the opinion …"  <u>Id.</u> (quoting

10  ERISA Procedure 76-1); see also <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S.

11  318, 326 n.5 (1992) (refusing to give a Department of Labor Advisory Opinion any

12  deference under the <u>Chevron</u> decision); <u>Barker v. Pick N Pull Auto Dismantlers,</u>

13  <u>Inc.</u>, 819 F.Supp. 889, 896 n.11 (E.D. Cal. 1993) (stating that a Department of Labor

14  Advisory Opinion is binding only on the parties to the letter and is not entitled to

15  deference).

16       For the foregoing reasons, the Defendant has furnished to the Plaintiff all

17  requested documents that come within the statute, and the Plaintiff is not entitled to

18  recover penalties for failure to disclose documents.

19       **4.**       **Statutory penalties do not apply to documents required by**

20                  **regulations.**

21       The Plaintiff argues that the <u>Sgro</u> case indicates that documents required to be

22  furnished under regulations can give rise to statutory penalties.  <u>See</u> <u>Sgro v. Danone</u>

23  <u>Waters</u>, 532 F.3d 940 (9th Cir. 2008).

24       Even if the Plaintiff has standing, which we dispute, the penalty provision of

25  29 U.S.C. § 1132(c)(1)(B) applies only to documents required by statute, not to

26  documents called for under the Code of Federal Regulations.  Plaintiff's allegation

27  that the plan administrator failed to furnish documents described in 29 C.F.R.

28  § 2560.503-1 does not result in statutory penalties under 29 U.S.C. § 1132(c).

1    Penalty provisions should be construed strictly, and one is not to be subjected

2 to a penalty unless the words of the statute plainly impose it. Commissioner v.

3 Acker, 361 U.S. 87 (1959). 29 U.S.C. § 1132(c)(1)(B) applies only to a request for

4 information which is "required by this subchapter [Subchapter I of Chapter 18 of

5 Title 29 of the United States Code]." Since no reference is made in 29 U.S.C.

6 § 1132(c)(1)(B) to requests for information described in regulations, the penalty

7 provision should not apply to documents required only under regulations.

8    The Ninth Circuit recently affirmed a district court ruling, which held that

9 "the statutory penalty authorized by 29 U.S.C. § 1132(c)(1) only applies where an

10 administrator fails to provide information it is required to furnish by statute. See 29

11 U.S.C. §§ 1132(c)(1) (stating, 'required by this subchapter to furnish'). The penalty

12 does not apply where a duty to furnish documents is imposed only by regulation."

13 Younkin v. Prudential Ins. Co., 2007 U.S. Dist. LEXIS 5376 (D. Mont. 2007), aff'd

14 in part and rev'd in part on other grounds in Younkin v. Prudential Ins. Co., 288

15 Fed. Appx. 344 (9th Cir. 2008). A similar holding was reached in Fergus v. Standard

16 Ins. Co., 27 F.Supp.2d 1247, 1252-1253 (D. Or. 1998).

17    Courts outside the Ninth Circuit have held that the penalty does not apply to

18 information requests under the regulations. The Third Circuit has held that plan

19 administrators incur no personal liability under 29 U.S.C. § 1132(c)(1)(B) for failure

20 to fulfill obligations imposed by 29 C.F.R. § 2560.503-1. Groves v. Modified

21 Retirement Plan for Hourly Paid Employees of the Johns Mansville Corp., 803 F.2d

22 109, 116 (3rd Cir. 1986). Congress shall not be deemed to have authorized an

23 administrative agency to decide what conduct should be penalized, unless Congress

24 has expressly granted that power. Id. at 117 (citing United States v. Eaton, 144 U.S.

25 677 (1892)). Congress has not done so, and penalties should not be assessed for

26 violations of 29 C.F.R. § 2560.503-1. Groves, 803 F.2d at 118. The Sixth Circuit

27 has reached the same conclusion. Stuhlreyer v. Armco, Inc., 12 F.3d 75, 79 (6th Cir.

28 1993). The Seventh Circuit also agrees with this holding. Wilczynski v.

1    Lumbermens Mutual Casualty Co., 93 F.3d 397, 406-407 (7th Cir. 1996).  At least

2    one district court from outside the Ninth Circuit also concurs.  Brucks v. Coca-Cola

3    Co., 391 F.Supp.2d 1193, 1212 n.17 (N.D. Ga. 2005) (stating that if Congress

4    intended for section 1132(c) to apply to the Department of Labor's regulations, it

5    would have so indicated, instead of authorizing penalties only for violations of the

6    subchapter, by which it was referring to the ERISA statute).

7         Any reliance upon Sgro v. Danone Waters, 532 F.3d 940 (9th Cir. 2008), for

8    the proposition that "ERISA's remedies provision gives . . . a cause of action to sue

9    a plan 'administrator' who doesn't comply with a 'request for . . . information'" is

10   misplaced.  In Sgro, the court excluded the key words "which such administrator is

11   required by this subchapter to furnish" in its quoted language from 29 U.S.C.

12   § 1132(c)(1).  Since the court dismissed the claim for failure to specify which

13   defendant the documents were requested from, the court did not analyze the

14   language of 29 U.S.C. § 1132(c)(1)(B) which limits the penalty to information

15   "required by this subchapter," and its single sentence on the subject should be

16   considered dicta.

17        Furthermore, 29 C.F.R. § 2560.503-1 contains a specific remedy for failure to

18   furnish documents required thereunder, and it does not include a monetary penalty.

19   If such a failure occurs, the claimant is deemed to have exhausted the administrative

20   remedies available under the plan and shall be entitled to sue for benefits and

21   receive a de novo judicial review.  Booton v. Lockheed Med. Benefit Plan, 110 F.3d

22   1461, 1465 (9th Cir. 1997); 29 C.F.R. § 2560.503-1(l); 65 F.R. 70246, 70256 (Nov.

23   21, 2000).

24        For these reasons, an alleged failure to furnish documents described in 29

25   C.F.R. § 2560.503-1 does not result in statutory penalties under 29 U.S.C.

26   § 1132(c).

27

28

1    **5.**  **All documents required by regulation have been furnished.**

2    Even if documents required by regulations could give rise to a penalty, no

3 penalty would apply in this case because all relevant documents described in 29

4 C.F.R. § 2560.503-1 were furnished to the Plaintiff.  Since the Plaintiff's claim was

5 denied for being filed after the deadline described in the Insurance Certificate, it is

6 unclear what documents the Plaintiff is demanding because the Insurance Certificate

7 has already been furnished to the Plaintiff.

8    **6.**  **Plaintiff received explanations of benefits setting forth the**

9       **reasons for denial of the claim.**

10   Plaintiff also complains that the explanation of benefits it received on

11 August 25, 2009 is somehow inadequate.  The explanation of benefits clearly

12 explains that the claim was not submitted within the timely filing limit under the

13 provider contract, certificate, and/or state law.  The certificate states the following in

14 the "Appealing a Company Decision" section on page 49:

15    "The appeal must be filed within 180 days of receiving a denial notice

16    or explanation of benefits."

17   Since the claim was initially denied in an explanation of benefits received by

18 the Plaintiff in 2006, an appeal filed in 2009 clearly is not timely filed within the

19 180-day period required by the certificate.  There is nothing mysterious or

20 misleading about the fact that the Plaintiff delayed in appealing a denied benefit for

21 over two years, and had the appeal denied on the basis that it did not meet the 180-

22 day deadline.

23   The Plaintiff misstated the law when it claimed that the reference to state law

24 in the explanation of benefits is misleading.  Insured health plans, such as the one at

25 issue in this case, must comply with certain state insurance laws under the

26 "insurance savings clause" set forth in 29 U.S.C. § 1144(b)(2)(A).  See, e.g.,

27 Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003).

28

1        Tenet disclosed all required materials under 29 U.S.C. § 1024(b)(4) and

2 29 C.F.R. § 2560.503-1.  It is not clear what additional documents the Plaintiff

3 claims should be disclosed as relevant to a determination that the appeal was not

4 filed in a timely manner.[3]

5        Since the Plaintiff has slept on its rights, and can no longer make a claim for

6 benefits, the Plaintiff appears to be attempting to recover lost potential benefits by

7 filing an inappropriate claim for statutory penalties.  As explained in Section B.3,

8 above, a suit for statutory penalties is not permitted where there is no concurrent

9 claim for benefits.

10        Moreover, Plaintiff once again suggests that Tenet denied the claim in an

11 effort to confuse the issues and impose penalties upon Tenet.  Plaintiff claims Tenet

12 issued an adverse benefit determination and formal denial.  Plaintiff's Brief, p. 21,

13 lines 21-23.  However, PacifiCare issued this.  Plaintiff further claims Plaintiff had

14 no information to know where it stood with respect to the adverse benefit

15 determinations.  However, Plaintiff had PacifiCare's response indicating that CPT

16 codes were needed and received its denial of the claim due to untimeliness.

17        In summary, Tenet has furnished to the Plaintiff all documents that must be

18 furnished under ERISA, and no statutory penalty should be awarded.

19      **D.**     **Penalties Are Not Warranted Here.**

20        No penalty for disclosure violations should be assessed in this case because

21 the Plaintiff lacks standing, as explained in Section B, above.  Even if the Plaintiff

22 had standing, the Plaintiff has been furnished all documents requested by Plaintiff

23 which are required to be furnished under ERISA, as described in Section C, above.

24

25

26

27

28

[3]   The Plaintiff claimed that Tenet failed to provide adequate notice of this adverse benefit determination, as required by 29 C.F.R. § 2560.503-1 paragraph (h).  As indicated above, the notice was adequate.  In any event, the Plaintiff's assertion is irrelevant to this case for document disclosure violations because the notice is not among the documents for which the Plaintiff made a written request.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1  Even if documents required under regulations could be the basis of statutory

2  penalties, which we dispute, the documents requested by the Plaintiff are not

3  described in the regulations.  The Plaintiff's claim for benefits due under the plan

4  was denied because it was not filed in a timely manner.  To the extent that

5  documents requested by the Plaintiff have not been furnished to the Plaintiff, they

6  have nothing to do with the time at which the benefit claim was filed, and are not

7  relevant to the denied claim.  Therefore, the requested documents need not be

8  furnished under the regulations.

9      As explained in Section C, above, Tenet has provided to the Plaintiff all

10 documents required to be furnished under the statute.  While documents required

11 under regulations are not subject to the statutory penalties, as explained in

12 Section C, above, Tenet has furnished the Plaintiff with all documents required by

13 the regulations.  In the event the Court determines that there are additional

14 documents that should be furnished to the Plaintiff, no penalties should be awarded

15 with respect to those documents which are beyond Tenet's control, as set forth in

16 29 U.S.C. § 1132(c)(1).

17      Furthermore, the Court has authority to decline to impose penalties.  Graeber

18 v. Hewlett Packard Income Protection Plan, 281 Fed. Appx. 679, 681 (9th Cir.

19 2008); 29 U.S.C. § 1132(c).

20

21 Dated:  May 12, 2010            ALLEN MATKINS LECK GAMBLE
                                  MALLORY & NATSIS LLP
22                                SAMUEL H. STEIN
                                  MONICA M. QUINN
23

24                                By:  _____/s/ - Monica M. Quinn_____
                                  MONICA M. QUINN
25                                Attorneys for Defendant
                                  TENET BENEFITS
26                                ADMINISTRATION COMMITTEE

27

28